MITCHELL, Plaintiff, v. HERREMAN et al., Defendants

(41 N. W.2d 829)

(File No. 9153. Opinion filed March 10, 1950)

Original Proceeding

**Caldwell & Burns,** Sioux Falls, for Plaintiff.
**B. H. Schaphorst,** Brookings, for Defendants.

RUDOLPH, J.  At an election in the city of Brookings held on April 19, 1949 the electors decided to change its governing body from a board of commissioners consisting of a mayor and two commissioners to a board of commissioners consisting of a mayor and four commissioners.  SDC 45.05.  Under SDC 45.0504 the change in the number of commissioners does not take place until the next annual municipal election.  This section provides:  "If at such election a change of form of government or number of commissioners is decided upon, at the next annual municipal election officers shall be chosen under the changed form of government."  The question presented in this proceeding is whether "at the next annual municipal election" in the city of Brookings to be held on April 18, 1950, there should be elected an entirely new board of city commissioners, or whether those members of the old board whose terms do not expire in 1950 hold over as members of the new board of commissoiners.

We assumed original jurisdiction of this proceeding because of the time element involved.  It appears that only a few days prior to the time the application was presented to this court the present city commission had taken the position that its members whose terms do not expire in 1950 hold over and will become members of the five-member board.  The board is proceeding to notice and hold the annual election on this basis.  It appeared to us that should the commission be in error at least a serious question would be presented as to whether such error could be corrected after the annual election on April 18, 1950.  Time would not permit starting the proceeding in circuit court, appealing to this court and having a decision on appeal prior to the election.  We, therefore, issued the alternative writ of mandamus that the questions presented might be finally decided before the election.  We find no merit in the motion to quash.

The facts are without dispute and adequately present the question referred to above.  Under the provisions of SDC 45.0802, had there been no change in the number of commissioners to be elected, the terms of the present commission members would expire in 1952 and 1954.  The may-

or's term expires this year. It is the position of the board that the members whose terms expire in 1952 and 1954 hold over as members of the new commission, and that there should be elected this year only the mayor and two new commissioners.

We are of the view that the question presented is dependent upon a construction of our statutes. The provisions providing for the change of form of government as now contained in SDC 45.05 came into our law with the 1919 revision. Rev.Code 1919, Secs. 6191 to 6195 inclusive. Prior to 1907 the only provision relating to change of government by municipalities was Sec. 1170, Rev.Pol. Code 1903, which provided for the incorporation of a city existing under a special charter. Ch. 86, Laws of 1907 which was superseded by Ch. 119, Laws of 1913 authorized an election to determine whether a city should organize under a commission. This 1913 law also authorized an election to determine whether a city government organized with five commissioners should be reduced to three commissioners. There was no provision in the 1913 law for increasing the number of commissioners from three to five. With reference to the reduction of commissoners the 1913 law in Sec. 3 provided, "* * * if the majority of the voters in any city where five commissioners are in control, shall determine that the governing board shall consist of three commissioners then said three commissioners may be elected at any municipal election, or at any special election called for that purpose as herein provided. And when said three commissioners have been elected and qualified, the terms of office of the five commissioners theretofore serving shall cease, and the three newly elected commissioners shall assume and perform the duties of the respective offices for which they were elected * * *." This provision of the 1913 law was not expressly carried over into the revision of 1919. However, the authority to reduce the number of commissioners was provided in those sections of the 1919 Code relating to the change of form of government which now appear in substance as SDC 45.05. The 1919 Code and the law at present not only provide for a reduction in the number of commissioners, but also provide for an increase from

three to five, and make the provisions governing the reduction in all respects applicable to the increase.

■ It is clear, we believe, that the number of commissioners could not be reduced other than by having the five members of the old board retire upon the election of the new three-member board. Confusion would result, in the absence of some specific provision, from a holding that upon an increase in the number of commissioners the old members would hold over. For example, how would the terms of various commissoners be fixed. It seems clear, that had the legislature intended old members of a three-member board would hold over after an increase in the number of commissioners some specific provision would have been made regarding the terms of office of commissioners. As stated above, the 1919 law, carried over as SDC 45.0504, makes no distinction between a reduction in the number of commissioners and an increase. This section of our Code refers specifically to "a change of form of government or number of Commissioners", and then provides that at the next election "officers shall be chosen under the changed form of government." Obviously if the change was from an aldermanic form to a commission form or from a commission form to·an aldermanic form or a reduction in the number of commissioners there could be no holding over by members of the old board, and the legislature in these instances clearly contemplated the election of an entirely new board. Not having made any distinction in the procedure in the event of an increase in the number of commissioners, and having made no specific provision for holding over by old members in such event, we believe it clear that when the legislature provided that "officers shall be chosen under the changed form of government" it intended to require that an entirely new board be elected after a vote to increase membership with terms of office to be determined by lot as provided in SDC 45.0802. No distinction was intended between a vote for increasing commissioners and the other situations resulting from the electors voting for a change. With this legislative intention expressed in our statutes, it follows that the offices of all present commissioners were abolished in the same sense that

the offices were abolished in the case of State ex rel. Card v. Gray et al., 44 S.D. 60, 182 N.W. 320.

■ The statutě, SDC 45.0802, fixing the terms of the members of the commission at five years, is subject to the provisions relating to a change in the form of government. The term of a municipal officer is liable to change or termination by the transition which the corporation undergoes in the process of reorganization. 62 C.J.S., Municipal Corporations, § 501, p. 940.

Judgment will be entered requiring the defendants to take such action as is required by statute to notice, call and hold the annual municipal election in the city of Brookings on Tuesday the 18th day of April, 1950 for the election of a new board of commissioners consisting of a mayor and four commissioners.

HAYES, P.J., and SMITH, J., concur.

ROBERTS and SICKEL, JJ., dissent.

HAYES, P.J. I concur in the opinion of RUDOLPH, J.

By the form of the ballot submitted to the electors of the city of Brookings on April 19, 1949, the qualified voters were called upon to decide whether the governing body of the city should be changed to that of a mayor and four commissioners. 637 electors voted for a change, 109 against. Clearly, this ballot did not propose that two more members be added to the board then serving. Exercising their right so to do, the electors voted to abandon the governmental organization then serving and to substitute therefor a different governing body.

The two general forms of city government recognized by our code are mayor and common council and board of commissioners. SDC 45.0401. It is clear also, except where the provisions of SDC 45.09 apply, that under what is generally referred to as the commission form the governing bodies are composed and made up of three-member boards. SDC 45.0801. Whether a change from three to five commissioners is one of form poses a debatable nicety. The name of the form continues but the composition of the governing body is decidely and materially changed.

In any event, the present officers of the city of Brookings were chosen to serve as members of a governing body being abandoned. They were not elected as officers of the organization voted in as a replacement of the former agency.

ROBERTS, J. (dissenting).

It seems to me that the court has disregarded the plain provisions of SDC 45.0504. This section simply fixes the time of the first election under the reorganization. It does not purport to fix tenure of office or indicate that the terms of incumbents shall cease when officers under a reorganization shall have been elected and qualified. It may be conceded that if a termination of office is required to fit into a scheme of reorganization, the intention to terminate would be implied and the loss of office by an incumbent would be a necessary incident. When there is an increase from three to five commissioners, the termination of offices is not required to effect the change. A commission of five members does not differ so materially from the commission which it supplants in its powers and duties as to make it incompatible to continue incumbents in office. The powers and duties are essentially the same, but are differently apportioned among members. SDC 45.08. Since termination of office is not necessary to evolve an increase in the number of commissioners, it seems obvious that in the absence of statutory expression there is no sound basis for holding that the offices of all present commissioners are terminated. I think that the writ should be vacated.

SICKEL, J., concurs in this dissent.